J-A23037-21

2021 PA Super 219

| | | |
|---|---|---|
| HARSHAD PATEL | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| KANDOLA REAL ESTATE, LP; GARY | : | No. 260 MDA 2021 |
| KANDOLA A/K/A GURVINDER | : | |
| KANDOLA; EXPRESS AUTO TRUCK | : | |
| STOP, LLC; EXPRESS FUEL | : | |
| DISTRIBUTORS CORPORATION; | : | |
| REGAL CONSULTING CORPORATION | : | |

Appeal from the Order Entered January 29, 2021
In the Court of Common Pleas of Perry County Civil Division at No(s):
2016-1053

BEFORE:   BENDER, P.J.E., MURRAY, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:          **FILED: NOVEMBER 8, 2021**

Appellant Harshad Patel appeals from the Order entered in the Court of Common Pleas of Perry County on January 29, 2001, granting summary judgment in favor of Kandola Real Estate, LP (Kandola Real Estate); Gary Kandola a/k/a Gurvinder Kandola (Gary Kandola); Express Auto Truck Stop, LLC (Express Auto); Express Fuel Distributors Corporation (Express Fuel) (collectively "Kandola") and Regal Consulting Corporation (Regal) (collectively "Appellees").  Following our review, we affirm.

In 2014, Appellant and his son Sachin Patel were interested in purchasing a business. After seeing an advertisement on the Internet,

_____

[*] Former Justice specially assigned to the Superior Court.

Appellant contacted a representative of Regal, which is in the business of acting as the sales agent for businesses, to inquire about a gas station and truck stop complex. Kandola owned the real estate associated with the complex.

A one and one-half page prospectus prepared by Regal indicated the truck stop complex contained a "super volume" gas station and a "high volume" convenience store. The prospectus also made representations as to the approximate gross and net yearly income of the complex, which Appellant maintains were materially false.

In the course of negotiations between Appellant and Gary Kandola, Appellant received two separate spreadsheets purporting to contain financial information for the complex for 2014. Appellant executed a Lease Agreement with Kandola on April 15, 2015, and on that date, Appellant paid a deposit of $200,000 and later paid an additional amount of $300,000.

Pursuant to the Lease Agreement, Appellant was required to abide by the terms of a fuel supply agreement into which Alliance Energy, LLC and Express Auto had entered in January of 2013. In addition, the fuel supply agreement was required to be assumed by and assigned to Appellant.

Appellant began operating the complex in June of 2015 and continued doing so until September of 2016. In September 2016, after losing money from the outset, the truck stop closed, and on December 29, 2016, Appellant initiated the instant civil action against Appellees.

In his Complaint, Appellant brought claims for Intentional Misrepresentation (Count I- Gary Kandola, Kandola Real Estate and Regal); Negligent Misrepresentation (Count II-Gary Kandola, Kandola Real Estate and Regal); Negligent Misrepresentation (Count III-Gary Kandola and Express Fuel); Fraud in the Inducement (Count IV- Gary Kandola, Kandola Real Estate and Express Fuel); Tortious Interference with Contractual Relations (Count V- Gary Kandola and Express Auto); Conversion (Count VI- Gary Kandola and Express Auto) and Breach of Contract (Count VII- Kandola Real Estate).

Regal filed an Answer and New Matter on February 3, 2017, and on April 5, 2017, it filed a Petition to Transfer Venue or Dismiss the Complaint due to forum *non conveniens*. Kandola filed Preliminary Objections to the Complaint on May 18, 2017. On June 20, 2017, the trial court denied Regal's Petition to Transfer Venue or Dismiss the Complaint. The trial court also indicated that the causes of action against Appellees had been sufficiently pled and denied Kandola's Preliminary Objections.

On September 27, 2019, Regal filed its Motion for Summary Judgment, and Kandola thereafter filed its Motion for Summary Judgment on October 1, 2019. On December 21, 2020, the trial court granted Appellees' respective summary judgment motions.

In its Order entered on January 29, 2021, the trial court certified the matter for appeal and decreed "that an immediate appeal would facilitate resolution of the entire case." Appellant filed a timely notice of appeal on

March 1, 2021.[1]  The trial court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and on March 11, 2021, Appellant filed his "Pa.R.A.P. 1925(B) Concise Statement of Errors Complained of on Appeal."  On April 7, 2021, the trial court filed its Memorandum wherein it indicated that its previous Memorandum of Law entered on December 21, 2020, had thoroughly set forth the reasons for its ruling, and, therefore, a supplemental opinion was not deemed to be necessary.   Therein, the trial court had held the following:

> AND NOW, this 21st day of December, 2020, for the reasons stated in the attached Memorandum, Defendant Regal Consulting's Motions for Summary Judgment as to Counts I and II are GRANTED.  Said Counts are hereby DISMISSED as to Defendant Regal Consulting, Corp.
> Defendant Kandola's Motion for Summary Judgment as to Counts I, II, III, IV, V, VI, and VII are GRANTED.  Said Counts are hereby DISMISSED at to Defendant Kandola Real Estate, LP, et al.

In his appellate brief, Appellant presents the following Statement of Questions Involved:

> 1.     Whether the trial court erred in granting summary judgment on [Appellant's] claims of intentional misrepresentation (Count I), negligent misrepresentation (Counts II-III) and fraud in the inducement (Count IV) on the basis that [Appellant] did not

---

[1] The thirtieth day following the entry of the trial court's Order was Sunday, February 28, 2021.  Therefore, Appellant had until March 1, 2021, to file his appeal.  *See* 1 Pa. C.S.A. § 1908 (excluding weekend days and legal holidays from the computation of the time period for a filing when the last day of the time period falls on a weekend or legal holiday).

establish justifiable reliance where justifiable reliance presents factual issues to be determined by a jury/fact-finder?

2. Whether the trial court erred in applying the Gist-of-the- Action Doctrine to [Appellant's] tortious interference with contractual relations and conversion claims against Gary Kandola and Express Auto Truck Stop, LLC, where Plaintiff did not have a contractual relationship with those parties and his contractual relationship was with Kandola Real Estate, LP?

3. Whether the trial court erred in granting summary judgment on [Appellant's] breach of contract claim where material issues of fact existed as to whether Defendant Kandola Real Estate, LP breached the Lease Agreement by failing to assign and transfer the Fuel Supply Agreement to [Appellant] and interfered with such assignment in violation of the Lease Agreement and its duty to act in good faith?

Brief for Appellant at 5.

Pennsylvania Rule of Civil Procedure 1035.2 establishes the standard of

review for a motion for summary judgment:

After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law:

    (1)    Whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

    (2)    If, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa. R.C.P. 1035.2(1),(2).

This Court reviews the grant of summary judgment to determine whether the trial court erred in concluding the record indicates the moving party is entitled to judgment as a matter of law as follows:

> In reviewing an order granting summary judgment, our scope of review is plenary, and our standard of review is the same as that applied by the trial court. Our Supreme Court has stated the applicable standard of review as follows: [A]n appellate court may reverse the entry of summary judgment only where it finds that the lower court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that the moving party was entitled to a judgment as a matter of law. In making this assessment, we review the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. As our inquiry involves solely questions of law, our review is de novo.
>
> Therefore, our responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a prima facie cause of action, such that there is no issue to be decided by the fact-finder. If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied.

***Cara Salsberg V. Donna Mann and Drexel University***, 2021 WL 4191267, at *1-2 (Pa.Super. Sept. 15, 2021) (*en banc*) (citation and brackets omitted).

Appellant initially argues the trial court erred in granting summary judgment on the Intentional Misrepresentation, Negligent Misrepresentation, and Fraud in the Inducement claims brought in his Complaint because justifiable reliance presents factual issues to be determined by a factfinder. In considering this argument, we are mindful of the following:

> Fraudulent (or intentional) misrepresentation requires the plaintiff to prove six elements: (1) a representation; (2) that is material to the transaction at issue; (3) made falsely, with knowledge of

- 6 -

its falsity or reckless disregard as to whether it is true or false; (4) with the intent to mislead another person into relying on it; (5) justifiable reliance; and (6) an injury proximately caused by the reliance. ***Bortz v. Noon***, 556 Pa. 489, 729 A.2d 555, 560 (1999). The four elements of a common law claim for negligent misrepresentation are: (1) a misrepresentation of a material fact; (2) made under circumstances in which the actor should have known of its falsity; (3) with an intent to induce another to act on it; (4) thereby causing injury to a party who justifiably relied upon the misrepresentation. ***Id***. at 561. In contrast with intentional misrepresentation, a negligent "misrepresentation must concern a material fact and the speaker need not know his or her words are untrue, but must have failed to make a reasonable investigation of the truth of these words." ***Id***.

***Gregg v. Ameriprise Financial, Inc.***, 245 A.3d 637, 645–46 (Pa. 2021).

Appellant sets forth the following allegations of misrepresentation in his

brief:

[1] Kandola falsely claimed that the Truck Stop Complex netted a yearly income of $500,000;

[2] Kandola and Regal prepared a Prospectus, provided to [Appellant], that included a statement that the seller would guarantee a net yearly income of approximately $550,000;

[3] The $550,000 figure was guaranteed by Kandola in statements to [Appellant] and used by Kandola to calculate the price that [Appellant] was to pay in leasing/purchasing the Truck Stop Complex;

[4] Regal Consulting or Kandola prepared a spreadsheet titled "DuncannonIncome& Expenses2014" which showed a net income of **$283,505** and expenses of **$1,530,096**, but when the information was provided to [Appellant], the spreadsheets were altered to show a net yearly income of $778,511 and yearly expenses of $1,035,090;

[5] Kandola falsely promised to discount diesel fuel sales to [Appellant] by selling the fuel at a penny above "rack rate";

[6] Kandola did not disclose to [Appellant] of existing DEP violations at the Truck Stop Complex, or an ongoing Consent Agreement with the DEP regarding water contamination.

Brief for Appellant at 28-29 (emphasis in original).

Pennsylvania has adopted the "justifiable reliance" standard set forth in Sections 540 and 541 of the Restatement (Second) of Torts and recognizes "that the recipient of an allegedly fraudulent misrepresentation is under no duty to investigate its falsity in order to justifiably rely, but...is not justified in relying upon the truth of an allegedly fraudulent misrepresentation if he knows it to be false or if its falsity is obvious." ***Toy v. Metropolitan Life Insurance Company***, 593 Pa. 20, 54, 928 A.2d 186, 207 (2007). The foregoing principles are applicable even if the plaintiff is considered to be a "sophisticated" consumer. ***See Drelles v. Manufacturers Life Ins. Co.***, 881 A.2d 822, 840 (Pa.Super. 2005). Furthermore, "[w]here the means of obtaining the information in question were not equal, the representations of the person believed to possess superior information may be relied upon." ***Porreco v. Porreco***, 571 Pa. 61, 70, 811 A.2d 566, 571 (2002) (citation omitted).

This Court previously has held that "[t]he right to rely upon a representation is generally held to be a question of fact," ***Silverman v. Bell Savings & Loan Association***, 533 A.2d 110, 115 (Pa.Super. 1987), *appeal denied*, 518 Pa. 642, 542 A.2d 1371 (1988). The question of whether a party's reliance upon a representation was justifiable "is one that should be decided

by a jury on the basis of all of the facts and permissible inferences which may be drawn from the evidence presented at trial." **Myers v. McHenry**, 580 A.2d 860, 865 (Pa.Super. 1990). **See also Toy**, 593 Pa at 53, 928 A.2d at 208 (stating in Pennsylvania "justifiable reliance is typically a question of fact for the fact-finder to decide, and requires a consideration of the parties, their relationship, and the circumstances surrounding their transaction.").

In the matter *sub judice*, the trial court determined that the first four counts of Appellant's complaint involve justifiable reliance on his part. In support of its finding that summary judgment thereon is proper, the trial court reasoned as follows:

> The alleged misrepresentations in the Complaint are statements made by [Appellees] in a Prospectus created by Defendant Regal in anticipation of a sale of Defendant Kandola's business. [Appellant] obtained this Prospectus when he became interested in the potential purchase of the Truck Stop Complex. The representations in question are referring to the gas station as "super volume," labeling the convenience store attached as "high volume," net profit of the Truck Stop Complex, gross income of the Truck Stop Complex, and net profit of the Truck Stop Complex. The prospectus was created by Defendant Regal using information provided to them by Defendant Kandola.
>
> Defendant Kandola made a Motion to Dismiss this count due to the inability of [Appellant] to be able to show Justifiable Reliance on the alleged Misrepresentations. In his motion, Defendant Kandola argues that express clauses in the lease agreement as well as due diligence performed by [Appellant] negate any potential justifiable reliance. This [c]ourt agrees with that analysis.
>
> The alleged misrepresentations of "high volume" and "super volume" are more puffery than genuine facts to be relied on by [Appellant]. "Puffery is an exaggeration or overstatement expressed in broad, vague, and commendatory language. Commonwealth v. Golden Gate Nat'l Senior Care LLC, 158 A.3d 203 (Pa. Commw. 2017). Puffery is used in advertising to get the

attention of potential customers. It is a way to get their attention so they look into something further. Puffery is by no means a sole reason to purchase something. Indicating that a Truck Stop is "high volume" or "super volume" is simply a way to get a potential buyer interested and get them to look at the numbers to check the profit margin.

Also in the Prospectus, there were numbers showing the net profit and gross income of the Truck Stop Complex. Numbers are a more reliable piece of information than the classification as high volume or super volume. However, [Appellant] did not simply rely on those numbers when he signed the agreements involved with this transaction. [Appellant] took those numbers and dug deeper. [Appellant] did not, in fact, rely on the numbers presented in the Prospectus. [Appellant] requested further documentation from Defendant Kandola, including tax records. [Appellant] has admitted repeatedly that he noticed conflicting information between the Prospectus and financial documents he received through his own due diligence performed prior to the transaction being completed. This due diligence directly negates the claim of justifiable reliance on information obtained in the Prospectus. Although [Appellant's] interest was peaked [sic] due to the information in the Prospectus, [Appellant] followed up on the information by doing his due diligence. [Appellant] admitted in Depositions that he looked at additional financial records of Defendant Kandola before making the ultimate decision to purchase the Truck Stop Complex. Below are excerpts from Depositions of [Appellant] that show the due diligence and lack of reliance on the prospectus.

Harshad Patel Deposition, 5-29-2019, pg 27-28

Q. Well, it was produced from your files. That's why I am assuming it came from your files.
A. Yeah. So we had a survey done. I guess that's what this is.
Q. If you'll look at the second page of it, you'll see that it bears the date April 3, 2015 up near the upper right?
A. Um-hum.
Q. And that date is on all the pages, I think. Do you know when you first saw this?
A. I would have seen sometime after that, I guess.
Q. Okay. Well, again, we know the lease was signed on April 15th of 2015. Did you see this before you signed the lease?
A. Yea.
Q. Okay. Was that part of your due diligence to —

A. Yes.

Pg. 67

Q. So you're saying you initially received a tax document that was less than that. And then you received another one which showed a higher —
A. So I think that that document showed — if I remember correctly, the first tax return was 30 million. And when my accountant pointed out the sales number from other documents was 15 million, Gary said yes, there's probably just an oversight or mistake, and then the document was corrected.


Pg. 77

Q. And you also had an attorney through this whole process to assist you with the due diligence, right?
A. That's correct.
Q. Anyone else that assisted you with the due diligence in going forward with this lease agreement, other than your attorney, your accountant, your son, even your nephew?
A. Yeah, I don't recall anybody else.

Pg. 78-80

Q. So is it fair to say, then, that you were really relying upon the due diligence that you received from Mr. Kandola, all the documents, and all that other information at the time that you went through with the lease agreement?
A. Yes.
…
Q. And so when you received this document at the very beginning of looking into purchasing a gas station, you knew you had to conduct due diligence, right?
A. Yes.
Q. I mean you knew that you couldn't just rely on this one document, right?
A. That's right.
Q. Right. And that's why you had an accountant. That's why you had a lawyer, that's why you made sure that you looked at all the numbers to make sure everything was accurate, right?
A. Um-hum.
Q. Yes?

A. Yes.

[Appellant] also went to Defendant Kandola's office on a few occasions to discuss the transaction and any discrepancies found during the due diligence performed by [Appellant]. [Appellant's] requests for additional information, emails with Defendant Kandola, and meetings at Defendant Kandola's office show that he does not meet the level of reliance for justifiable reliance on the information provided in the Prospectus. This [c]ourt finds that [Appellant] gained interest in the Truck Stop Complex because of the Prospectus but further performed his own due diligence in order to verify his potential purchase of the Truck Stop Complex. As such, Summary Judgment is GRANTED with respect to Defendant Kandola and Counts I, II, III, and IV of the Complaint.

Defendant Regal is a broker for the sales transaction of the Truck Stop Complex. In their [sic] capacity, Defendant Regal created the Prospectus based on the information provided by Defendant Kandola. There was a clause in the contract between [Appellant] and Defendant Regal stating that Defendant Regal did not verify specific information and [Appellant] should perform their [sic] own due diligence to verify the facts presented in the prospectus. Defendant Regal has shown that there is no question of material fact regarding the due diligence completed by [Appellant] and the indemnity clause in the contract between [Appellant] and Defendant Regal.

Trial Court Memorandum, filed 12/21/20, at 4-8 (unnumbered).

Following our review of the record, we agree. Counts I thorough IV of Appellant's complaint allege fraud on the part of one or more of the Appellees, an element of which requires that Appellant was justified in relying upon the alleged representation.

However, as the aforesaid deposition testimony evinces, Appellant admitted he had relied upon his own due diligence in completing the transaction and not upon any representation made by Appellees. *See* Appellant's Deposition 5/29/19, at 76-80. In fact, Appellant could not recall

having failed to receive any document that he had requested as part of the due diligence process. *Id*. at 76.

The Prospectus, which is attached to Appellant's deposition testimony and is less than two pages in length, states that "Broker has not audited the books/records and accordingly does not warrant the accuracy of the information, photo may not represent the particular business." Despite his claims that he had relied on statements made therein, Appellant had the benefit of counsel to assist him with his due diligence and an accountant to review all the financial information, including bank statements, spreadsheets, tax returns and other relevant documents including the Lease Agreement. Appellant stated that at the time he signed the Lease Agreement, "he had all of the information, in [his] mind, to sign that agreement." *Id*. at 77-78.

Moreover, the Lease Agreement contains several disclaimers as to any claims that may have been made outside of that document. *See* Lease Agreement, April 15, 2015, at 1-2. In addition, to ensure the figures stated in the Prospectus were accurate, Appellant relied on his own due diligence in requesting and receiving underlying accounting data which he in turned shared with his counsel and accountant for a full review. *Id*. at 75-76. He agreed that he was "really relying upon the due diligence that [he] received from Mr. Kandola, all the documents, and all that other information at the time that [he] went through with the lease agreement." *Id*. at 78-79.

Also, on February 9, 2015, Appellant reviewed, signed, and dated the Regal Confidentiality and Non-circumvention Agreement, and acknowldged at his deposition that it gave him the responsibility to verify all information provided to him. *See* Deposition Testimony of Appellant at 81-82. The Regal Letter of Intent Appellant read and signed on February 16, 2015, further provided that Regal acted strictly as a selling agent, and that Appellant understood he must rely upon Kandola for the accuracy of information. *Id*. at 85-86. Thus, as Regal stated in its brief, it "was merely the middleman or broker between the buyer/lessor" and "[a]ll of the facts the trial court relied upon were supported by the record[,]" *see* Brief for Appellee Regal Consulting Corporation at 6, 16.

Viewing this evidence in a light most favorable to Appellant as the nonmoving party, we concur with the trial court, and the record demonstrates, that Appellant did not justifiably rely on representations made by any of Appellees at the time he signed the Lease Agreement. Consequently, Appellant's first issue is without merit.

When considering Appellant's remaining issue, we are mindful that in granting summary judgment on Counts V and VI of Appellant's Complaint, the trial court determined the claims raised therein are barred by the gist of the action doctrine "because they arise out of the contractual obligations between the parties, the contract not being collateral." Trial Court Memorandum, filed 12/21/20, at 9 (unnumbered).

Under the "gist of the action" doctrine, an alleged tort claim against a party to a contract is barred when the "gist" of the cause of action, although sounding in tort, is in actuality a claim for breach of contractual obligations. **Bruno v. Erie Insurance Company**, 630 Pa. 79, 87, 106 A.3d 48, 53 (2014). The "critical determinative factor" is the "nature of the duty alleged to have been breached, as established by the underlying averments supporting the claim in a plaintiff's complaint." **Id**. 630 Pa. at 111, 106 A.3d at 68. "In this regard, the substance of the allegations comprising a claim in a plaintiff's complaint are of paramount importance, and, thus, the mere labeling by the plaintiff of a claim as being in tort, e.g., for negligence, is not controlling." **Id**.

The trial court's analysis on this issue is as follows:

> The tort claims in this complaint are Tortious Interference and Conversion. Both of these torts arise out of the Contractual obligations between [Appellant] and Defendant Kandola. The contract itself is not collateral to the situation, it is the reason for the claim. The Gist of the Action Doctrine bars the tort claims because they arise out of the contractual obligations between the parties, the contract not being collateral. For these reasons, Defendant Kandola's Motion for Summary Judgment as to Counts V and VI are GRANTED.

Trial Court Memorandum, filed 12/21/20, at 10 (unnumbered).

An action will be construed as an action in tort where the contract is collateral to the wrong ascribed to the defendant. **Knight v. Springfield Hyundai**, 81 A.3d 940, 950 (Pa.Super. 2013). The trial court herein determined Appellant's claims are barred as a matter of law by the gist of the

- 15 -

action doctrine because they arise out of contractual obligations between Appellant and Appellees. We find the record supports this finding.

Indeed, but for the Lease Agreement, there could have been no issue pertaining to the assignment and assumption of the Fuel Supply Agreement. As a result, we agree the gist of the action applies in this case.

Furthermore, Paragraph 2.3 of the Lease Agreement between Appellant and Kandola provides that the preexisting Fuel Supply Agreement between Alliance Energy and Express Auto "is being assigned to, and assumed by, Tenant effective as of the date hereof." Thus, although Appellant claims to the contrary that Kandola needed to take some additional action, the Lease Agreement itself effected the transfer of the preexisting Fuel Supply Agreement from Kandola to Appellant. Therefore, Appellant's final claims fail.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/08/2021

- 16 -